### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Case No. 10-cv-03177-REB-KMT

STEPHEN BLECK,

      Plaintiff,

v.

CITY OF ALAMOSA, COLORADO, and
JEFF MARTINEZ, individually, and in his official capacity as a Law Enforcement Officer
of the Alamosa Police Department,

      Defendants.

---

### ORDER

---

**Blackburn, J.**

      The matters before me are (1) **Defendants' Motion for Judgment on the Pleadings and for Summary Judgment** [#38][1] filed August 15, 2011; and (2) **Plaintiff's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56** [#130] filed January 20, 2012.  I deny plaintiff's motion and grant defendants' motion in part and deny it as moot in part.[2]

### I.  JURISDICTION

      I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal

---

[1]  "[#38]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  I use this convention throughout this order.

[2]  The issues raised by and inherent to the cross-motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the briefs. *Cf.* FED. R. CIV. P. 56(c) and (d). **Geear v. Boulder Cmty. Hosp.**, 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

question) and 1367 (supplemental jurisdiction).

## II.  STANDARD OF REVIEW

Both plaintiff and defendants have moved for summary judgment.[3]  Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.[4]  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d

---

[3] The mere fact that the parties have filed cross-motions for summary judgment does not necessarily indicate that summary judgment is proper for either party.  *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997).  *See also Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

[4] Defendants' motion also invokes, as to certain claims, a request for judgment on the pleadings as provided by Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)," *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000), and, thus, considers the sufficiency of the allegations of the complaint, *see Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  However, entry of the **Final Pretrial Order** ([#187], filed March 1, 2012) essentially moots arguments directed toward the complaint, which the Pretrial Order supplants and supersedes.  *See Youren v. Tintic School District*, 343 F.3d 1296, 1304 (10th Cir. 2003) (pretrial order supersedes all other pleadings and  governs case thereafter); *Safety Technologies, L.C. v. LG Technologies, LTEE*, 2000 WL 1585631 at *3 -4  (D. Kan. Oct. 11, 2000 ("The focus of the defendants' motions on the failure of the complaint to plead fraud with particularity or to state a claim is, therefore, misguided.  The pretrial order sets out the plaintiffs' factual allegations in more detail than the complaint and controls the course of this lawsuit.").  Accordingly, I will deny defendants' motion for judgment on the pleadings as moot.

However, I am compelled to point out to plaintiff that, despite his apparent conviction that he has had a motion to amend the complaint pending before the court by virtue of his response to defendants' 12(c) motion, he is mistaken, and in obvious need of a more thorough familiarity with the Local Rules of Practice for the United States District of Colorado-Civil.  *See D.C.COLO.LCivR* 7.1C. ("A motion shall not be included in a response or reply to the original motion.").

202 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense. *See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).  In either case, once the motion has been supported properly, the burden shifts to the nonmovant to show by tendering depositions, affidavits, and other competent evidence that summary judgment is not proper. *Concrete Works*, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 120 S.Ct. 334 (1999); *Nutting v. RAM Southwest, Inc.*, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

### III.  ANALYSIS

On August 6, 2010, Colorado State Patrol Dispatch received a 911 call from Andrew Tesar, a mental health counselor, reporting that he had received a distressing call from plaintiff.  Tesar reported that plaintiff, a Vietnam War veteran, was re-experiencing trauma and further was intoxicated, suicidal, and possibly armed.  Officers

3

with the Alamosa Police Department were dispatched to the local hotel where plaintiff was reported to be staying to perform a welfare check.  Defendant Jeff Martinez was the first to arrive on the scene, followed by Officers (and former defendants) B. Cooper and Kenneth Anderson and Corporal Robert Lockwood.[5]

The hotel clerk confirmed that plaintiff had checked in and that he had been drinking.  Officers recontacted Mr. Tesar, who reported that plaintiff was on the phone with Mr. Tesar's wife and was threatening to "blow his head off."  In a subsequent call, Mr. Tesar reported that plaintiff had cut off communication with him.

Based on these facts, the officers believed plaintiff was an imminent danger to himself and potentially to others.  Having obtained a key card from hotel personnel, the officers decided to enter the room without knocking, .  Officer Martinez entered the room first with his duty weapon drawn and in the ready position.  The other officers followed immediately.

As he entered the room, Officer Martinez saw plaintiff sitting on the bed facing away from him.  Officer Martinez's testimony that he could not see plaintiff's hands is not disputed.  The officers announced loudly that they were police and commanded plaintiff to show his hands and lie down on the floor.  Plaintiff failed to comply and, in fact, may have attempted to stand instead.

Still holding his gun in his right hand, Officer Martinez attempted to push plaintiff

---

[5]  Corporal Lockwood and Officer Anderson were originally named as defendants in this action but were removed from the caption of the **Amended Complaint** [#23] filed March 11, 2011.  Officer Cooper (as well as Alamosa Chief of Police, John Jackson) were dismissed by stipulation after defendants filed the present motion.  (**See Stipulated Motion for Partial Dismissal** [#108] filed December 13, 2011.)  As I granted the latter motion (**see Order of Dismissal as to Defendants B. Cooper and John Jackson, Only** [#109] filed December 14, 2011), defendants' motion is moot to the extent it seeks relief under Rule 12(c) and/or Rule 56 on behalf of these parties.

back down on the bed by reaching around plaintiff's right side with his free hand, a procedure that has been referred to herein as "going 'hands on.'"  This decision violated police department protocols, which requires an officer to holster his weapon before going hands on with a suspect.  Officer Martinez testified that he recalled his finger being outside the trigger guard when he moved to go hands on with plaintiff.[6]  Nevertheless, in attempting to gain control of plaintiff in this manner, Officer Martinez's weapon discharged, shooting plaintiff in the hip.

This lawsuit followed.  Of plaintiff's four original claims, three remain: (1) a Fourth Amendment claim for excessive force against Officer Martinez in his official and individual capacities; (2) a claim against the City of Alamosa for inadequate training/ supervision with regard to use of force in situations involving mentally ill individuals;[7] and (3) a state law claim for battery against Officer Martinez in his individual capacity.[8]  Because I find that the circumstances of this case fail to establish a seizure within the meaning of the Fourth Amendment, I grant defendants' motion to dismiss the two federal claims.  Further, I decline to exercise my discretion to continue to assert supplemental jurisdiction over plaintiff's pendant state law claim, and, therefore, dismiss that claim without prejudice.

---

[6] An assertion that Corporal  Lockwood corroborated at his deposition.

[7] By virtue of the entry of the Final Pretrial Order, plaintiff has abandoned his claim for maintenance of an unconstitutional policy.  To the extent defendants' motion seeks relief on that basis, therefore, it is moot.

[8] Plaintiff has confessed the official capacity portion of his battery claim against Officer Martinez in his response to defendants' motion.  (*See* **Plaintiff's Response to August 15, 2011 Defendants' Motion for Judgment on the Pleadings and for Summary Judgment (Doc. No. 38)** at 16 [#47] filed September 15, 2011.)

Plaintiff and defendants agree that the standards for identifying whether a Fourth Amendment violation occurred here must be determined by reference to the Supreme Court's decision in **Brower v. County of Inyo**, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).  In **Brower**, the Court considered whether a fleeing suspect had been seized for purposes of the Fourth Amendment by a police roadblock.  **See id.**, 109 S.Ct. at 1380.  The Court concluded that the suspect had been seized because the police, although perhaps not intending the suspect to fatally crash into the roadblock, had established it with the intent to terminate his flight:

> Thus, if a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment.  And the situation would not change if the passerby happened, by lucky chance, to be a serial murderer for whom there was an outstanding arrest warrant – even if, at the time he was thus pinned, he was in the process of running away from two pursuing constables.  It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*  That is the reason there was no seizure in the hypothetical situation that concerned the Court of Appeals.  The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means – his loss of control of his vehicle and the subsequent crash. If, instead of that, the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.

*Id.* at 1381 (emphasis in original).  In other words, pursuant to **Brower**, a seizure must be the result of a willful act.  *Id.*

There is no question but that, in the ordinary sense of the term, plaintiff was "seized," and that Officer Martinez intended to seize him.  Nevertheless, **Brower** teaches that this fact alone is insufficient to give rise to a seizure that implicates the Fourth Amendment.  To determine whether the seizure has constitutional dimension, I must focus more precisely on what means or instrumentality Officer Martinez intended to effectuate the seizure.  To be clear, this inquiry does not delve into Officer Martinez's subjective intent, *i.e.*, whether he intended to harm plaintiff in the process of effectuating the seizure, which subjective intent is irrelevant for Fourth Amendment purposes.  *See id*.[9]  Instead, the question is whether plaintiff was "stopped by the very instrumentality set in motion or put in place in order to achieve that result."  *Id.* at 1382.

On that score there is no genuine issue of material fact to suggest other than that Officer Martinez's intention was to seize plaintiff by going hands on and pushing him to the bed or the floor.  The instrumentality, therefore, was the hands on technique.[10]  A gun was not required – indeed, was contraindicated – in the execution of that technique.  Although undoubtedly the gun was intended as a show of the officer's authority, it was not the instrumentality by which Officer Martinez intended to effectuate the seizure itself.

---

[9]  This is one principal reason for the Supreme Court's caution that "[i]n determining whether the means that terminates the freedom of movement is the very means that the government intended we cannot draw too fine a line, or we will be driven to saying that one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned, or by a bullet in the heart that was meant only for the leg."  **Brower**, 109 S.Ct. at 1382.

[10]  Plaintiff's suggestion that Officer Martinez himself was  the instrumentality applies the test at to high a level of generality.  Were this the test, a Fourth Amendment seizure would be found in every case.

*See id.* at 1381 (use of police sirens and flashing lights in pursuit of car that subsequently loses control and crashes is not a seizure: "The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means[.]"); *Bella v. Chamberlain*, 24 F.3d 1251, 1256 (10ᵗʰ Cir. 1994) (shots fired at plaintiff did not constitute seizure but only "an assertion of authority"), *cert. denied*, 115 S.Ct. 898 (1995).

In other words, Officer Martinez's use of the gun was incidental to the intentional use of the hands on technique. The means intentionally applied was the use of hands on, not the gun. Proceeding with the technique while still holding a gun may well have been negligent, but the Constitution is concerned only with intentional conduct. *See Brower*, 109 S.Ct. at1381 ("[T]he Fourth Amendment addresses misuse of power, not the accidental effects of otherwise lawful government conduct.") (citation and internal quotation marks omitted); *Apodaca v. Rio Arriba County Sheriff's Department*, 905 F.2d 1445, 1447 (10ᵗʰ Cir. 1990) ("[O]ne seized unintentionally does not have a constitutional complaint."); *Koetter v. Davies*, 2010 WL 3791482 at *5 (D. Utah Sept. 22, 2010) ("[T]he Fourth Amendment prohibition on excessive force during arrest does not apply to unintentional or incidental applications of force."). *See also Dodd v. City of Norwich*, 827 F.2d 1, 7 (2ⁿᵈ Cir. 1987) (opinion on reargument) ("It makes little sense to apply a standard of reasonableness to an accident."), *cert. denied*, 108 S.Ct. 701 (1988). *See also Cole v. Bone*, 993 F.2d 1328, 1333 (10ᵗʰ Cir. 1993) ("The Fourth Amendment prohibits unreasonable seizures, not unreasonable or ill-advised conduct in

8

general.").

The issue might be inappropriate for summary resolution if the evidence suggested any genuine issue of material fact about whether Officer Martinez intentionally fired his weapon.  Yet even plaintiff's own experts admit there is no evidence suggesting that the shooting was attributable to anything other than an accidental discharge.  In considering similar scenarios, the courts have concluded unanimously that, without some dispute regarding volition on the part of the officer who fired the shot, no Fourth Amendment seizure occurs.  *See, e.g.*, *Dodd*, 827 F.2d at 7-8 (suspect who reached for gun while being handcuffed shot when officer reflexively pulled weapon away); *Brice v. City of York*, 528 F.Supp.2d 504, 513 (M.D. Pa. 2007) (summary judgment appropriate where plaintiff's only evidence of intent was officer's decision to carry his weapon into melee to restrain suspect who had been tackled by several officers while attempting to flee; "An excessive force claim may proceed to substantive analysis only after the excessive force plaintiff establishes a threshold volitional act."); *Pollino v. City of Philadelphia*, 2005 WL 372105 at *8 (E.D. Pa. Feb. 15, 2005) (granting summary judgment where plaintiff failed to produce credible evidence disputing defendant's assertion that weapon discharged accidentally during struggle with plaintiff); *Clark v. Buchko*, 936 F.Supp. 212, 219 (D.N.J. 1996) (summary judgment appropriate where suspect, after initially lying prone on floor to be handcuffed, pushed himself back up, backing into gun of officer who was providing cover, and gun discharged); *Troublefield v. City of Harrisburg*, 789 F.Supp. 160, 166 (M.D. Pa. 1992) (weapon fired as officer was reholstering it after handcuffing suspect; "[S]ome nature of volitional act on the part of the state actor must cause the harm to plaintiff for a fourth

9

amendment excessive force claim to sound.  Negligence in pulling out a firearm or in reholstering it is not sufficient[.]"), *aff'd*, 980 F.2d 724 (3d Cir.1992); *Glasco v. Ballard*, 768 F.Supp. 176, 177, 180 (E.D. Va. 1991) (officer exited car to speak to suspect with gun drawn but reached back inside car to stop it drifting forward, accidentally shooting suspect); *Matthews v. City of Atlanta*, 699 F.Supp. 1552, 1556-57 (N. D. Ga. 1988) (summary judgment appropriate where no evidence to dispute that gun discharged accidentally when, as officer reached through cab of suspect's truck to turn off engine, truck lurched forward, causing shot that killed suspect).  *Cf. Cardona v. Cleveland*, 1997 WL 720383 at *4 (6th Cir. 1997) (affirming denial of summary judgment where physical and forensic evidence raised sufficient doubt as to officer's version of events resulting in fatal shooting of suspect); *Otey v. Marshall*, 121 F.3d 1150, 1151, 1153-54 (8th Cir. 1997) (affirming denial of summary judgment to officer who claimed his gun accidentally discharged when he slipped and fell in pursuing suspect where witnesses disputed officer's version of events); *Owl v. Robertson*, 79 F.Supp.2d 1104, 1114 (D. Neb. 2000) (genuine issues of material fact precluded summary judgment where although officer claimed shooting was accidental, witnesses testified that officer had yelled "I'm going to fucking blow your head off" seconds before shooting suspect in the neck)

Granted, none of these cases reflects precisely the facts of this case, although *Brice* comes close.  Nevertheless, the principle to be derived is pellucid:  A Fourth Amendment seizure may be found only where there is evidence suggesting that the officer's decision to fire his weapon was volitional.  No such evidence having been adduced in this case, Officer Martinez is entitled to summary judgment.  Moreover,

because plaintiff's claim for failure to train/supervise as to the use of force in situations involving mentally ill suspects depends on a showing that a constitutional violation occurred in the first instance, *see Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003), the City of Alamosa is entitled to summary judgment on that claim as well.

Having resolved all plaintiff's federal claims, the only claim remaining is that for battery under state law against Officer Martinez in his individual capacity.  When all federal claims have been dismissed prior to trial, the court generally should decline to exercise supplemental jurisdiction over pendant state law claims.  *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002).  I find it appropriate to do so here, and, thus, will dismiss plaintiff's remaining state law claim.

## IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Defendants' Motion for Judgment on the Pleadings and for Summary Judgment** [#38] filed August 15, 2011, is **GRANTED IN PART** and **DENIED AS MOOT IN PART** as follows:

a.  That the motion is **GRANTED** with respect to plaintiff's First and Second Claims for Relief; and

b.  That the motion is **DENIED AS MOOT** with respect to

(1) Defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c);

(2) Any and all claims asserted against former defendants, John Jackson, individually and in his official capacity as Chief of Police of the Alamosa Police Department, and B.

Cooper, individually and in his official capacity as Law

Enforcement Officer of the Alamosa Police Department;

(3) Plaintiff's Third Claim for Relief; and

(4) Plaintiff's Fourth Claim for Relief, insofar as it is asserted

against defendant, Jeff Martinez, in his official capacity as

Law Enforcement Officer of the Alamosa Police Department;

2.  That **Plaintiff's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56** [#130] filed January 20, 2012, is **DENIED**;

3.  That plaintiff's First, Second, and Third Claims for Relief, as well as  plaintiff's Fourth Claim for Relief, insofar as it is brought against defendant, Jeff Martinez, in his official capacity as Law Enforcement Officer of the Alamosa Police Department, are **DISMISSED WITH PREJUDICE**;

4.  That the court **DECLINES** to exercise supplemental jurisdiction over plaintiff's Fourth Claim for Relief, insofar as it is brought against defendant, Jeff Martinez, individually, and that claim is **DISMISSED WITHOUT PREJUDICE** ;

5.  That judgment **SHALL ENTER** as follows:  on behalf of defendants, City of Alamosa, Colorado, and Jeff Martinez, individually and in his official capacity as Law Enforcement Officer of the Alamosa Police Department, against plaintiff, Stephen Bleck, as follows:

a.  As to plaintiff's First Claim for Relief, on behalf of

defendant, City of Alamosa, Colorado, against plaintiff,

Stephen Bleck; provided, further, that the judgment as to this

claim shall be with prejudice;

b.  As to plaintiff's Second and Third Claims for Relief, on

behalf of defendant, Jeff Martinez, individually and in his

official capacity as Law Enforcement Officer of the Alamosa

Police Department, against plaintiff, Stephen Bleck;

provided, further, that the judgment as to this claim shall be

with prejudice;

c.  As to plaintiff's Fourth Claim for Relief, on behalf of

defendant, Jeff Martinez, in his official capacity as Law

Enforcement Officer of the Alamosa Police Department,

against plaintiff, Stephen Bleck; provided, further, that the

judgment as to this claim shall be with prejudice; and

d.  As to Plaintiff's Fourth Claim for Relief, on behalf of

defendant, Jeff Martinez, individually, against plaintiff,

Stephen Bleck; provided, further, that the judgment as to this

claim shall be without prejudice;

5.  That judgment also **SHALL ENTER** on behalf of defendants, John Jackson,

individually and in his official capacity as Chief of Police of the Alamosa Police

Department, and B. Cooper, individually and in his official capacity as Law Enforcement

Officer of the Alamosa Police Department, against plaintiff, Stephen Bleck, in

accordance with my **Order of Dismissal as to Defendants B. Cooper and John

Jackson, Only** [#109] filed December 14, 2011; provided, further, that the judgment as

to the claims asserted against these defendants shall be with prejudice;

6.  That all other currently pending motions, including, but not limited to (a)

13

defendants' **Motion To Strike Plaintiff's Retained Expert Witnesses** [#122], filed January 5, 2012; (b) **Plaintiff's Motion To Strike Defendants' Expert Major Ijames and Request for Sanctions for Failure To Produce Records Pursuant to Subpoena Duces Tecum** [#123] filed January 5, 2012; and (c) **Plaintiff's Motion To Strike Defendants' Retained Expert Witness Donna Heltzell, R.N.** [#151], filed February 9, 2012, are **DENIED AS MOOT**;

7.  That the telephonic setting conference currently scheduled for April 10, 2012, at 10:00 a.m. (MDT), is **VACATED**; and

8.  That on all claims dismissed with prejudice, defendants are **AWARDED** their costs, to be taxed by the clerk of the court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated March 14, 2012, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge